UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| BRANDY K. D.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 4:19-cv-00228-TWP-DML |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of the Social Security, | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## Report and Recommendation on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. (Dkt. 24). As addressed below, the Magistrate Judge recommends that the District Judge AFFIRM the decision of the Commissioner of the Social Security Administration that Brandy was not disabled.

## Introduction

Brandy applied in October 2015 for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, alleging that she had been disabled since April 15, 2015. After her application was denied initially and on reconsideration, a hearing was held on August 1, 2018, before administrative law judge Peter J.

---

[1] To protect privacy interests of claimants for Social Security benefits, the Southern District of Indiana has chosen to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions. The plaintiff will therefore be referred to by her first name in this Report and Recommendation.

Boylan, who issued a decision on November 19, 2018, that Brandy was not disabled between her alleged onset date and the date of his decision.[2] The Appeals Council denied review on September 9, 2019, rendering the ALJ's decision for the Commissioner final. Brandy timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Brandy contends that the ALJ's decision is erroneous, requiring reversal and remand, because he did not (1) properly evaluate an opinion by her treating physician, (2) assess whether fibromyalgia was a medically determinable impairment, (3) consider relevant evidence about her migraine headaches, and (4) evaluate the effects of her impairments in combination.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review and then address Brandy's assertions of error.

## Standard for Proving Disability

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Brandy is disabled if her impairments are of such severity

---

[2] The ALJ's decision states that Brandy's date last insured under Title II was December 31, 2020, but Brandy acknowledges that her date last insured occurred 2½ years earlier, on June 30, 2018. That difference is not material to the court's analysis of the errors raised by Brandy.

2

that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her

3

impairment-related physical and mental limitations.  20 C.F.R. § 404.1545.  At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled.  The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her age, work experience, and education (which are not considered at step four), and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four.  *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).  If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity.  20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential.  A court must affirm if no error of law occurred and if the findings are supported by substantial evidence.  *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001).  Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion.  *Id.*  The standard demands more than a scintilla of evidentiary support, but it does not demand a preponderance of the evidence.  *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability.  *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004).  The ALJ need not address every piece of evidence

in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I. The ALJ's Sequential Findings

Brandy was born in 1971, was 44 years old at the alleged onset of her disability in 2015, and was 46 years old as of her date last insured of June 30, 2018. Brandy last worked on an assembly line at an automobile parts factory, fabricating and inspecting parts. (R. 38-39). She stopped working when she began having difficulty walking and grasping items. (R. 39).

At step one, the ALJ found that Brandy had not engaged in substantial gainful activity since her alleged onset date. At step two, he determined that Brandy's severe impairments were osteoarthritis, fibromyalgia, multiple arthopathies, chronic obstructive pulmonary disease, obstructive sleep apnea, obesity, affective disorder, and anxiety disorder. The ALJ decided at step three that no listings were met or medically equaled, and Brandy has not suggested that the ALJ failed to evaluate a relevant listing or failed to consider evidence pertinent to any particular aspect of a listing.

For the RFC, the ALJ decided that Brandy is capable of light work as defined at 20 C.F.R. § 404.1567(b)—meaning she can lift no more than 20 pounds at any time, can frequently lift and carry objects that weigh up to 10 pounds, and can

engage in a "good deal of walking or standing," generally understood as a capability to walk and/or stand up to six hours in a work day—but must observe certain postural limits (only occasional climbing, balancing, stooping, kneeling, crouching, crawling), and avoid respiratory irritants, dangerous machinery, and heights. (R. 14). The RFC also includes accommodations for the mental effects of Brandy's pain, depression, and anxiety, including by restricting her to simple work. (R. 14-15).

Based on the RFC and the testimony of a vocational expert, the ALJ found at step four that Brandy could not perform her past relevant work. At step five, he determined, also relying on the VE's testimony, that based on Brandy's vocational factors and her RFC, myriad jobs exist in significant numbers in the national economy that she can perform, including Merchandise Marker, Routing Clerk, Mail Clerk, Ticket Counter, Document Specialist, and Addresser. Accordingly, the ALJ determined that Brandy was not disabled at any time between her alleged onset date and the date of the ALJ's decision.

## II.  **Brandy's Assertions of Error**

Brandy asserts that the ALJ erred in four respects, by allegedly failing to (1) evaluate a treating physician's opinion, (2) assess whether fibromyalgia was a medically determinable impairment, (3) consider relevant evidence about migraine headaches, and (4) evaluate the effects of all of Brandy's impairments in combination.

After summarizing some of the evidence about Brandy's medical impairments and treatment, the court will address Brandy's assertions of error in turn.

### A. Brandy was regularly treated for arthritic symptoms and pain.

As the ALJ described, the medical evidence shows Brandy's continual reports of and treatment for pain, primarily in both knees but also sometimes in her back and neck. She also complained of headaches and indicated she had suffered constant headaches for years, including while she was working. The ALJ found that physical testing and imaging were not consistent with the severity of the various pain symptoms and effects reported by Brandy, a finding that is supported by substantial evidence. (And Brandy does not attack the ALJ's evaluation of the reliability of her subjective descriptions of pain and their effects.)

While Brandy sometimes presented at medical appointments with an antalgic gait (a limping gait in response to pain), she did not always, and her physical examinations, including tests for strength and balance, were essentially normal over the course of the years of treatment reflected in the record. Scans of her brain did not explain the headache symptoms; an MRI of her knees showed mild to moderate arthritis but no signs of ligament damage; and MRIs of her neck and lumbar spines showed only mild spondylosis (degenerative changes in the spine) without nerve compression or disc herniation. The ALJ also considered that Brandy was morbidly obese and had been diagnosed with fibromyalgia, both factors and impairments that can manifest in joint pain.

The ALJ characterized Brandy's medical conditions as having stabilized and the treatment for her pain as having been conservative. While Brandy attacks the ALJ's description of her treatment as conservative, the court cannot find that

description materially inconsistent with the evidence.  The description is adequately supported.  Brandy's doctors provided regular injections at her knees—several times per year—to treat her arthritic pain symptoms, and the evidence indicates she received positive results from this regular treatment.  She was prescribed and attended physical therapy, which provided some relief, according to the therapist's records.  She was given various pain and other medications, including for her knee and spinal pain, fibromyalgia symptoms, and headaches, which were continually monitored and adjusted or altered as efficacy changed. She used a TENS unit and was prescribed knee braces.  Brandy also received Botox injections to treat her headaches.

### B. The ALJ did not fail to evaluate properly a medical opinion.

The record shows that Brandy was first seen by a doctor because of knee pain in September 2014, about six months before her alleged onset date.  The physician, Dr. Clegg, took a history from Brandy regarding her knee pain, conducted an overall bodily systems examination, reviewed knee x-rays, administered an injection at each knee, and had a "long discussion about the diagnosis and prognosis [of] knee osteoarthritis." (R. 355).  Brandy contends that the ALJ was bound to treat one statement within Dr. Clegg's record of his discussion with Brandy as a medical opinion by a treating physician about Brandy's particular functional deficits.  The statement is:  "We discussed avoiding activities that involve prolonged deep knee flexion, prolonged standing, or prolonged sitting without rest."  The court rejects her argument.

First, Dr. Clegg could not be considered a treating physician at the time of his first evaluation of Brandy; he had never seen her before. Second, read in context of the entire medical record of Brandy's initial visit, it is not reasonable to characterize Dr. Clegg's discussion with Brandy about knee arthritis as an opinion about her particular functional capacity. The discussion is generalized and seemingly could apply to any person whose doctor had initially diagnosed her knee pain as arthritic in nature. The discussion addresses the "multimodal treatment regimen for knee arthritis" to include modifying activities, avoiding prolonged standing or sitting, avoiding stair climbing when possible, engaging in non-loadbearing exercises such as bicycling, swimming, and using an elliptical trainer, losing weight, using knee braces, other orthotics, glucosamine and chondroitin supplements, and engaging in physical therapy. The court does not fault the ALJ for not considering Dr. Clegg's general discussion with Brandy at their first appointment as medical opinions about her functional capacity.

### C. The ALJ did not fail to assess Brandy's fibromyalgia.

Brandy argues that the ALJ "failed to determine if [her] fibromyalgia was a medically determinable impairment." (Dkt. 13 at p. 6). That is not true. The ALJ found that Brandy suffered from fibromyalgia and that it was one of her "severe" impairments. By classifying fibromyalgia as a severe impairment, the ALJ necessarily decided it was medically based, *i.e.,* medically determinable within the meaning of the Social Security regulations. Further, the ALJ accounted in the RFC

for chronic pain symptoms he found that Brandy suffers from in part because of her fibromyalgia.

### D. The ALJ did not ignore Brandy's headaches.

Brandy contends that the ALJ's analysis of her headaches is erroneous, requiring reversal and remand, because the ALJ did not use the term "migraine" in describing her headaches and did not decide that migraines were a severe impairment. The court rejects her contention. First, the ALJ's decision does acknowledge that a neurologist to whom Brandy was referred assessed the headache symptoms she described as migraines. (*See* R. 18). The ALJ noted that Brandy first saw the neurologist in February 2016 because of her complaints of chronic headaches, who assessed "chronic migraines" and adjusted her medications, and that the neurologist later provided relatively "benign" treatment through medication and periodic Botox injections. He concluded that the records did not suggest that her headaches precluded her ability to work. The court finds that the ALJ provided sufficient support for his analysis of Brandy's headaches, their treatment, and their effects on her work abilities.

### E. There is no indication the ALJ failed to consider the totality of Brandy's impairments.

Brandy's final argument is that the ALJ "failed to determine the effect of the combination of [Brandy's] impairments" on her residual functional capacity. (Dkt. 13 at p. 5). This argument is undeveloped. It is supported only by a statement that the ALJ's decision allegedly does not contain "any discussion of the Plaintiff's impairments in combination" and a conclusory remark that someone with Brandy's

10

combination of impairments cannot work. (*Id.*). The court does not accept Brandy's argument. The ALJ's decision does discuss the combination of her impairments, and the ALJ explained the evidence and reasoning underlying the RFC he chose as consistent with the overall record evidence. Nothing more was required.

## Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the District Judge AFFIRM the Commissioner's decision that Brandy was not disabled.

Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within 14 days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Date: January 28, 2021

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system